THOMAS BUTLER, Respondent, v. THE MANHATTAN RAILWAY COMPANY, Appellant.

While, where a wrong has been done from which pecuniary injury has resulted, or when injury is the natural or probable result of the wrong, the injured party is not remediless, although the extent of the injury is not capable of precise proof, yet, when the damages claimed are neither the probable result of the wrong nor capable of proof, they cannot be awarded by a jury.

In an action by a husband to recover damages resulting from a personal injury to his wife, alleged to have been caused by defendant's negligence, the evidence tended to show that in consequence of the injury, the wife had a miscarriage. The court permitted the jury to consider and include in their verdict "any damages arising from the injury and resulting in depriving the plaintiff of prospective offspring." *Held*, error.

The injury to the wife was caused by the closing of the gate to the platform of one of defendant's cars, as she was seeking to enter the car. The wife testified to the injury, that the guard was looking another way, and that immediately after the injury she made an exclamation of pain. She was then permitted to testify to an insulting remark made by the guard in reply to her exclamation of pain. *Held*, error.

While, in such an action, proximity in time with the act causing the injury is essential to make what was said by a third person competent evi-

dence as part of the *res gestæ*, that alone is insufficient; to make it competent what was said must be part of the principal fact, and so part of the act itself; that is, naturally accompanying the act, or calculated to unfold its character and quality.

*Butler* v. *M. R. Co.* (4 Misc. Rep. 401), reversed.

(Argued October 23, 1894; decided October 30, 1894.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 5, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover for the loss of services of plaintiff's wife, caused by injuries resulting from the alleged negligence of defendant.

The facts, so far as material, are stated in the opinion.

*Edward B. Thomas* for appellant. The court erred in allowing the plaintiff's wife to testify over objection and exception that the defendant's guard told her after the accident that she "could go to hell." (*Duche* v. *Wilson*, 37 Hun, 519; Mayne on Dam. 21, 22; Sedg. on Dam. §§ 437, 455; *Sherman* v. *D., etc., R. Co.*, 106 N. Y. 542; *Horner* v. *Everett*, 91 id. 641, 643; *People* v. *Davis*, 56 id. 95, 102; *Eighmy* v *People*, 79 id. 546, 559; *Waterman* v. *Whitney*, 11 id. 157, 161; *Maine* v. *People*, 9 Hun, 111; *Waldele* v. *N. Y. & H. R. R. Co.*, 95 N. Y. 274; *Duby* v. *H. R. R. R. Co.*, 17 id. 131; *Ordway* v. *Sanders*, 58 N. H. 132; *D. & M. R. R. Co.* v. *Van Steinburgh*, 17 Mich. 99; *Commonwealth* v. *Hackett*, 2 Allen, 136; *Coleman* v. *People*, 58 N. Y. 561, 562; *Vandervoort* v. *Gould*, 36 id. 639, 644; *People* v. *Gonzales*, 35 id. 49, 59.) The court erred in instructing the jury that they could award the plaintiff damages for loss of prospective offspring and inability of his wife to bear children. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 42; *Wilson* v. *Law*, 112 id. 536; *Story* v. *Brennan*, 15 id. 524; *McGowan* v. *Duff*, 14 Daly, 315; *Waltheimer* v. *Lamont*, 9 N. Y. S. R. 437; *Dawson* v. *City of Troy*, 49 Hun, 322; *Story* v. *Brennan*, 15 N. Y. 524.)

The court erred in submitting to the jury the question of future damages, there being no evidence in the case that the injuries suffered by the plaintiff's wife were reasonably certain to be permanent. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Elwood* v. *W. U. T. Co.*, 45 id. 554; *Curtis* v. *R. & S. R. R. Co.*, 18 id. 541; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 45; *Clark* v. *Brown*, 18 Wend. 229; *Lincoln* v. *S. & S. R. R. Co.*, 23 id. 425, 435; *Tozer* v. *N. Y. C. R. R. Co.*, 105 N. Y. 617; *McClaim* v. *B. C. R. R.*, 116 id. 467, 468; *Johnson* v. *M. R. Co.*, 52 Hun, 113; *Gregory* v. *N. Y., L. E. & W. R. Co.*, 55 id. 303; *Atkins* v. *M. R. Co.*, 57 id. 102.)

*Gilbert D. Lamb* for respondent.    The testimony on behalf of plaintiff in respect to the assistance rendered plaintiff in his business by Mrs. Butler, and the value of her services, and the expenses to plaintiff arising from the accident was proper. (*Filer* v. *N. Y. C. & H. R. R. R. R. Co.*, 49 N. Y. 47; *Turner* v. *City of Newburgh*, 109 id. 30; *Blaechinska* v. *H. M. & H. for L. W.*, 130 id. 497; *Colwell* v. *M. R. Co.*, 64 Hun, 452; *Matteson* v. *R. R. Co.*, 35 N. Y. 493; *Gumb* v. *R. Co.*, 114 id. 411.)  ○The admission of testimony as to what Mrs. Butler did and said to the guard at the moment of the occurrence, and what the guard said in response at the same time, was proper. (1 Greenl. on Ev. § 108; *Enos* v. *Tuttle*, 1 Conn. 250; *Tilson* v. *Terwilliger*, 56 N. Y. 273; *Bagley* v. *Smith*, 10 id. 489; *Carpenter* v. *Stilwell*, 11 id. 61; *Keller* v. *R. R. Co.*, 24 How. Pr. 172; *Willets* v. *S. M. Ins. Co.*, 45 N. Y. 45; *Chisholm* v. *N. T. Co.*, 61 Barb. 363; *Shoemaker* v. *G. F. Ins. Co.*, 60 id. 84.)

ANDREWS, Ch. J.    The evidence supports the claim that through the negligence of the guard in closing the gate to the platform of one of the defendant's cars, before the plaintiff's wife, who was seeking to enter the car, had got upon the platform, she was seriously injured, and that as one of the consequences of the injury she had a miscarriage a few days thereafter.    Her pregnancy had then existed a few weeks.

The court permitted the jury to consider and to include in the verdict " any damages arising from the injury and resulting in depriving the plaintiff of prospective offspring." The charge on this point was expanded and repeated by the judge. The defendant excepted to this ruling. We think the exception was well taken, construing the charge most favorably to the plaintiff, that the court intended to confine the jury to a consideration of damage to the plaintiff from the loss of the chance of offspring involved in the particular miscarriage proved.

The action was for the loss of service of the wife. The term service in actions of this character includes any pecuniary injury suffered by the husband from having been deprived of the aid, comfort and society of his wife, or which reasonably may be expected to result in the future, including charges and expenses incurred, or which he may be put to in consequence of the wrong. (Cooley on Torts, p. 266 [226].) The wife has her own action for her physical injury, and for the pain and suffering to which she has been or will be subjected. The husband's action is for the consequences affecting his estate and for depriving him of the aid, society and companionship of his wife, which, except for the wrong, he might reasonably expect to enjoy. It is doubtless true that the raising of children is one of the objects of marriage. The husband may and usually does contemplate the birth of children as one of the important advantages of the marital relation. At common law and independently of statutory enactments, the death of a person caused by the negligence of another, gave no right of action for damages to any person, however closely connected with the deceased. But recent statutes, changing the rule of the common law, recognize the ties of kindred, the mutual dependence of parents and children, husband and wife, and of persons standing in other degrees of relationship, the reasonable expectations that pecuniary aid or assistance, even outside of legal obligations, will be extended by relatives to each other in case of necessity, and upon this basis have given a statutory action for the benefit of the widow and next

of kin of a deceased person whose death was caused by the
wrongful act, neglect or default of another against the wrong-
doer, to recover the pecuniary damages, not exceeding a
specified amount, resulting from such death, to the persons for
whose benefit the action is given. (Chap. 450, Laws of 1847;
chap. 256, Laws of 1849.)  Under these statutes actions are
allowed to be maintained for the death of infant children for
the benefit of parents, and recoveries have been sustained, the
basis of damage being the supposed pecuniary value to the
parents of the life of the infant. (*Etherington* v. *R. R. Co.*,
88 N. Y. 641; *Birkett* v. *K. I. Co.*, 110 id. 504; *Hough-
kirk* v. *R. R. Co.*, 92 id. 219.)  The difficulty of finding any
safe basis upon which to estimate the pecuniary damages in
such cases, has been frequently adverted to by the courts.
Whether the infant would have lived to an age capable of
rendering service, and whether the continued life would be a
pecuniary benefit or burden, and the numerous contingencies
which may affect the value of the life make the ascertainment
of such value by a jury, in a great degree, a matter of specu-
lation and conjecture.   But where the inquiry relates to
the value of the life of a child cut off in infancy, there
are some material facts capable of proof, which may be
placed before the jury and which afford some aid in estimat-
ing the pecuniary loss suffered by parents or other relatives.
The age and sex of the infant may be proved, its mental and
physical condition, its bodily strength, and generally whether
there was the apparent promise of a continued or useful life,
or the contrary.   The speculation which, in the present case,
the jury were permitted to make had not even these safe-
guards, slight as they are.   They were allowed to estimate the
pecuniary interest which a husband had in the chance that an
embryo, not yet quickened into life, would become a living
child.   The sex could not be known, and if born alive, the
infant might have been destitute of some faculty, or so physi-
cally infirm as to have made it a helpless charge.   There are
no elements whatever upon which a jury could base any con-
clusion that a pecuniary injury had been suffered by the

plaintiff from the loss of the unborn child, and this inquiry
should have been excluded from the consideration of the jury
as too remote and speculative to form an element in the recov-
ery. Where a wrong had been done from which pecuniary
injury has resulted, or where injury is the natural or probable
result of a wrong, the injured party is not remediless, although
the extent of the injury is not capable of precise proof. The
jury in such a case may fix the damages within reasonable
limits, as best they may. Actions for defamation or involving
recovery for pain or suffering are examples. But where dam-
ages claimed are neither the probable result of the wrong nor
capable of proof, they cannot be awarded by the jury. It is
not in the interest of justice to extend the field of speculation
in jury trials beyond its present limits, and to sustain the 1 il-
ing in this case would go beyond what has been hitherto sanc-
tioned by the courts.

We think there was error also in one of the rulings upon the
admission of evidence. The plaintiff's wife testified to the
closing of the gate and the blow received, and stated that at
the time the guard was looking in the opposite direction;
that immediately after the blow she made an exclamation of
pain. The plaintiff's counsel then asked the witness " what
the guard said in reply to her exclamation of pain." The
question was objected to by the counsel for the defendant as
incompetent and hearsay, whereupon the plaintiff's counsel
said : " I intend to prove that the brakeman in charge of the
brakes at the moment of the blow did not treat her (the plain-
tiff's wife) with respect, but, on the contrary, insulted her."
The trial judge, after warning the plaintiff's counsel, finally
allowed the question to be put, and the witness answered :
" He said, I can go to hell. Shut up." The defendant's
counsel excepted to the evidence. The only claim made in
support of the ruling of the court is that the remark of the
brakeman was part of the *res gestæ.* We think the ruling
cannot be supported on this ground. The only circumstance
upon which it can be claimed to have been part of the *res
gestæ* was its connection in point of time with the transaction

under investigation, viz., the alleged injury from the closing of the gate. While proximity in point of time with the act causing the injury is in every case of this kind essential to make what was said by a third person, competent evidence against another as part of. the *res gestæ*, that alone is insufficient, unless what was said may be considered part of the principal fact, and so a part of the act itself. But as in this case the act was complete before the remark of the brakeman was made, although closely connected with it in point of time, and was not one naturally accompanying the act, or calculated to unfold its character or quality, it was not admissible as *res gestæ*. It was as independent of the principal fact, and as incompetent as evidence as though the act and the remark had been much further separated in point of time. *Res gestæ* in a case like this implies substantial coincidence in time, but if declarations of third persons are not in their nature a part of the fact, they are not admissible in evidence, however closely related in point of time. (See *Waldele's Case*, 95 N. Y. 274, and cases cited.) The remark of the brakeman was brutal and for that reason was calculated to prejudice the jury, but it had nothing to do with the question at issue, viz., whether the plaintiff's wife sustained an injury through the defendant's negligence, and having been admitted against the protest of the defendant's counsel, its admission was reversible error.

Upon both grounds stated, the judgment should be reversed and a new trial granted.

All concur, except BARTLETT, J., not voting.

Judgment reversed.