## WITRAK v. NASSAU ELECTRIC R. CO. .

(Supreme Court, Appellate Division, Second Department. June 19, 1900.)

1. NEGLIGENCE—ELEMENTS OF DAMAGE—MISCARRIAGE.

    While plaintiff could not recover for loss of offspring due to a miscarriage caused by the accident in question, yet evidence was admissible to show that her sufferings were increased thereby, notwithstanding her complaint contained no mention of such miscarriage.

2. SAME—VERDICT—DAMAGES.

    Where plaintiff was badly bruised on the leg, knee, thigh, and hip, and a portion of her extensor muscle was torn from the kneepan, which necessitated the use of a crutch, and was, in the opinion of experts, permanent, a verdict of $3,500 was not so large as to warrant its being set aside on the ground that the jury had considered a fact as an element of damage which it was instructed to disregard.

Appeal from trial term, Kings county.

Action by Annie Witrak against the Nassau Electric Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Henry Yonge (C. J. Shearn, on the brief), for appellant.

Abram H. Dailey, for respondent.

WILLARD BARTLETT, J. The plaintiff in this action has recovered a verdict of $3,500 for personal injuries sustained by her in consequence of being struck and knocked down by one of the defendant's electric cars. She was pregnant at the time of the accident, and was delivered of a stillborn child about six weeks afterwards; the indications being that the child had died but a short time before delivery. The medical evidence showed that the confinement was about ten days late, and the physician who attended the plaintiff expressed the opinion that the injury was at least one factor in producing the destruction of the fetus. The complaint made no mention of the fact that the plaintiff's child was stillborn. It did allege, however, that she was far advanced in pregnancy at the time of the accident. The averment in regard to her injuries was that she had "sustained contusions, and was injured internally, and sustained a severe shock to her nervous system, and permanently injured, and was caused to suffer great pain and made ill, and will suffer great pain and be made ill in the future, and was and will be prevented from attending to her household affairs and duties, to her damage ten thousand dollars."

In opening the case to the jury, counsel for the plaintiff stated that at the time of her confinement it was necessary to use instruments, in consequence of the injury, and that the plaintiff suffered extreme pain, and her child was taken from her, dead. To this statement objection was made by counsel for the defendant on the ground that the use of instruments and the death of the child were not charged in the complaint, and that the statement was calculated, of necessity, to prejudice the jury against the defendant. The court remarked

65 N.Y.S.—17

that, if counsel for the plaintiff could prove it, he had a right to state it, whereupon an exception was taken in behalf of the defendant. To understand the precise scope and meaning of the ruling here, we must read a little further in the record, as follows:

"Mr. Yonge: I except to the statement. I warned him before he made it. The Court: He has a right to make it, for anything I see. Unless he has limited himself, he has a right to prove any damage. Mr. Yonge: That is not an element of damage in this case. The Court: That she suffered in childbirth? Mr. Yonge: That she suffered in childbirth, yes; but the fact that the child was born dead is not. Mr. Dailey: It was taken from her. It is simply an incident in connection with her pain and suffering. Mr. Yonge: I have taken my exception, and I have nothing more to say."

This colloquy shows that the court intended to hold that the fact that the plaintiff's child was stillborn was only material to be considered if the physical injury to the plaintiff herself had thereby been increased. In actions of this character, proof to the effect that the plaintiff's sufferings have been aggravated by reason of a miscarriage caused by the accident is clearly admissible. The plaintiff is entitled to recover for the physical injury which she has sustained, and for the pain and suffering which she has endured and will endure, as a result of the defendant's negligence. So far as a miscarriage or the delayed delivery of a stillborn child augments the mother's physical injury, pain, or suffering, so far is it proper to be considered on the question of damages; but its effect in depriving the mother of offspring cannot be taken into account as an element of damage at all. In a husband's suit for damages arising out of a personal injury to his wife, as a result of which she suffered a miscarriage, it has been expressly held that nothing can be recovered by the husband on account of the loss of offspring. The inquiry is too remote and speculative. Butler v. Railway Co., 143 N. Y. 417, 38 N. E. 454, 26 L. R. A. 46. The reasoning in the case cited, which denies a right of recovery to the husband, is equally applicable to a similar claim on behalf of the wife herself. Where, however, the loss of offspring, as in the case of a miscarriage, is accompanied by bodily injury to the mother, or the infliction of pain upon her, such injury or pain is a proper subject of consideration in the assessment of damages. Oliver v. Town of La Valle, 36 Wis. 592; Brown v. Railway Co., 54 Wis. 342, 11 N. W. 356, 911; Shartle v. City of Minneapolis, 17 Minn. 308, 318 (Gil. 284). The following extract from the case last cited illustrates what we understand to be the correct rule upon the point under discussion:

"The attending physician was called as a witness, and it appeared from his testimony that the plaintiff's wife was pregnant at the time of the accident; that she was subsequently delivered of the child, which was dead at the time of delivery. Certain questions were put to the witness touching the condition of the child in ventre sa mere at the time of the accident, and subsequently to the time of delivery, which were objected to by the defendant. The testimony shows that there was a malformation of the child, caused wholly by the fall of the mother, which affected the mother injuriously. Whatever facts tend to show injury to the mother, which were the proximate result of the accident, would be properly received in evidence, and on this ground the evidence was proper."

It is to be observed that the admissibility of the evidence is distinctly placed upon the ground that the injury to the child had in-

juriously affected the mother. In view of the claim of plaintiff's counsel that this precise condition of things existed in the case at bar, and that the plaintiff herself had sustained physical injuries in consequence of the delayed delivery of her child, which delayed delivery was attributable to the defendant's negligence, the learned trial court committed no error in permitting counsel to refer to the fact that the child was born dead. Nor, under the circumstances, was it error to receive the testimony of the plaintiff to the effect that, while before the accident she had felt movements in her body, she felt no such movements after she was hurt. In Tobin v. Village of Fairport (Cir. Ct.) 12 N. Y. Supp. 224, evidence of the plaintiff's miscarriage was received, although no express reference to such miscarriage occurred in the complaint, which merely alleged that the body and limbs of the plaintiff were greatly hurt and bruised, and that she had suffered great bodily injury, and was made sick, sore, lame, and disabled, and had suffered great mental and bodily pain and been unable to attend to her affairs and business, and that the plaintiff was informed and believed that her injuries were permanent. The injury in that case was caused by a fall on a defective sidewalk, and it was held that, under the allegations of the complaint, the plaintiff might show any sickness which was the usual or expected result of her fall. "There is no doubt," said the court, "that an allegation that the injury made the plaintiff sick is enough to warrant her in proving any sickness which naturally grew out of the injury." Although this decision was rendered upon a motion for a new trial at the circuit, it expresses the views of Mr. Justice Rumsey, now a member of the appellate division in the First department, and commands our concurrence. I agree with him that, if the defendant is misled by the proffered proof as to a miscarriage, his remedy is by motion to suspend the trial, or by an application for a new trial on the ground of surprise.

The learned trial judge evidently thought that the proof tended to negative, rather than establish, the claim that the sufferings of the plaintiff had been augmented by the death of the unborn child. When, therefore, he came to charge the jury on the question of damages, he kept in mind the purposes for which the proof as to the loss of the plaintiff's child could properly be considered, and those for which it ought not to be considered at all, and he cautioned the jury against making any award for the loss of the child. The portion of the charge relating to this subject was as follows:

"I want you to understand very clearly that this matter of a child being stillborn cannot add one cent of damages in this case. If you did the contrary, I would have to set this verdict aside. You can give no damage for that. That is a thing that we may have regrets about, but that does not justify us in giving damages for it. The doctors say that the fact that the child was stillborn added nothing to the pain of childbirth. So it does not enter into this question of damages."

I was at first inclined to think that the amount of the verdict indicated that the jury disregarded this instruction, but a careful study of the record satisfies me that this impression is incorrect. The evidence showed that the plaintiff was badly bruised upon the left leg, knee, thigh, and hip, so that she had suffered a good deal of pain

from the time of the accident, in May, 1898, to the time of the trial, in November, 1899. There was an injury to the extensor muscle, a portion of which had been torn from the kneepan. This was characterized by a medical expert witness as permanent, inasmuch as it impaired the use of the limb so that she employed a crutch to assist her in walking at the time of the trial. While there was no fracture or shortening of the leg, and the testimony tended to show that the general condition of the plaintiff would improve, there was opinion evidence to the effect that her lameness would be lasting. "She cannot get well," said the same medical witness, "but she would be better if she would cease to think of her limb. If she would stop brooding over this lawsuit, and try to go about her ordinary avocations, she wouldn't be practically well. There would be disturbance enough to make her lame." In the light of this and other proof on the same subject, the amount awarded was not so large as to show that the jury failed to appreciate or follow the rule of damages laid down by the court for their guidance. I am, therefore, of the opinion that the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.