Chief Judge Fuld.
The principal question posed is whether there is a right of recovery under this State’s wrongful death statute (EPTL 5^4.1 [formerly Decedent Estate Law, § 130]) by the personal representative of a stillborn foetus which died as a result of injuries received while en ventre sa mere.
The plaintiff, Janice Endresz, seven months pregnant, was injured in an automobile accident in the winter of 1965 and two days later was delivered of stillborn twins, a male and a female. Four actions in negligence were brought against the persons assertedly responsible for the accident. In the first two actions — one for the wrongful death of each child—the plaintiff Steve Endresz, Janice’s husband, suing as administrator, seeks damages of $100,000 by reason of the distributees’ “ loss of anticipated * * * care, comfort and support during the minority and majority ” of each infant and for “ medical, hospital and funeral expenses incurred by reason of the death ” of the children. In the first cause of action in the third suit, the plaintiff Janice Endresz asks $500,000 damages for her injuries. In the second and third causes of action, she requests $50,000 for loss of the “ care, comfort, companionship, future *482 society, aid and comfort and services ” of each of the two stillborn children, further claiming to have ‘ ‘ been otherwise damaged ” as a result of their deaths. In the fourth suit, Mr. Endresz seeks $100,000 in the first count by reason of the expenses of his wife’s illness and the loss of her services and consortium. The second and third counts were the same as in Mrs. Endresz’s suit except for an additional claim of damages for “medical, hospital and funeral expenses” resulting from the children’s deaths.
On motion of the defendants, the court at Special Term, adhering to our determination in Matter of Logan (3 N Y 2d 800, affg. 2 A D 2d 842, affg. 4 Misc 2d 283), dismissed the first two suits for wrongful death. The court also dismissed the second and third causes of action in the parents’ own suits (No. 3 and No. 4) on the ground that they did not have a “ separate cause of action for the loss of care, comfort and companionship of said children Special Term did, however, give them leave to plead over and assert any causes of action which might be “ had under the theory [announced] in Ferrara v. Galluohio (5 N Y 2d 16).” On appeal, the Appellate Division reversed so much of that order as granted the plaintiffs permission to plead over, otherwise affirming.
Actions 1 and 2
This court has already decided that a wrongful death action may not be maintained for the death of an unborn child. (See, e.g., Matter of Logan, 3 N Y 2d 800, supra; Matter of Peabody, 5 N Y 2d 541, 547; see, also, Matter of Bradley, 50 Misc 2d 72; Matter of Irizarry, 21 Misc 2d 1099.) This view is held by the courts of a number of other jurisdictions[1] and, although there is authority to the contrary,[2] further study and thought confirm the justice and wisdom of our earlier decisions.
*483 Section 5-4.1 of the EPTL (L. 1966, ch. 952, eff. Sept. 1, 1967), re-enacting, without substantive change, former section 130 of the Decedent Estate Law, declares, insofar as pertinent, that “ The personal representative * * * of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent’s death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued.” Before there may be a “ decedent ”, there must, perforce, be birth, a person born alive, and, although the statute, enacted in 1847 (L. 1847, ch. 450), is silent on the subject, it is fairly certain that the Legislature did not intend to include an “ unborn ” foetus within the term “ decedent ”. Indeed, it was not until 1951, more than 100 years later, that this court—overruling a long-standing decision (Drobner v. Peters, 232 N. Y. 220 [1921])—decided that “ a child viable but in útero, if injured by tort, should, when born, be allowed to sue.” (Woods v. Lancet, 303 N. Y. 349, 353.) If, before Woods, a child so injured had no right of action, still less was such an action intended to lie on behalf of one who, never seeing the light of day, was deprived of life while still in its mother’s womb.
Our decision in the Woods case (303 N. Y. 349, supra) does not require us, as suggested, to reinterpret the wrongful death statute to provide compensation to the distributees of a stillborn foetus for “ pecuniary injuries ” resulting from its death apart from those sustained by the mother and father in their own right. The Woods decision, as the court recognized in Matter of Logan (3 N Y 2d 800, supra), simply brought the common law of this State into accord with the demand of natural justice which requires recognition of the legal right of every human being to begin life unimpaired by physical or mental defects resulting from the negligence of another. The considerations of justice which mandate the recovery of damages by an infant, injured in his mother’s womb and born deformed through the wrong of a third party, are absent where the foetus, deprived of life while yet unborn, is never faced with the prospect of impaired mental or physical health.
*484 In the latter case, moreover, proof of pecuniary injury and causation is immeasurably more vague than in suits for prenatal injuries. Manifestly, the Legislature did not intend to authorize the maintenance of a wrongful death action where there are 11 no elements whatever upon which a jury could base any conclusion that a pecuniary injury has been suffered by the plaintiff from the loss of the unborn child ”. (Butler v. Manhattan Ry. Co. 143 N. Y. 417, 421-422; see, also, Matter of Logan, 3 N Y 2d 800, supra; Carroll v. Skloff, 415 Pa. 47.) As the Pennsylvania Supreme Court pointed out in the Carroll case (415 Pa. 47, supra), the fact that the injured child “is born alive tends to effectively permit a just result, and reduces materially the inherent complex problems incident to causation and. the pecuniary loss suffered. * * * On the other hand, if the fetus is stillborn, speculation as to causation and particularly loss suffered is unreasonably increased” (p. 49). Beyond that, since the mother may sue for any injury which she sustained in her own person, including her suffering as a result of the stillbirth, and the father for loss of her services and consortium, an additional award to the ‘ ‘ distributees ’ ’ of the foetus would give its parents an unmerited bounty and would constitute not compensation to the injured but punishment to the wrongdoer. (See, e.g., Matter of Logan, 4 Misc 2d 283, 286, affd. 2 A.D 2d 842, affd. 3 N Y 2d 800, supra; Carroll v. Skloff, 415 Pa. 47, 49, supra; Graf v. Taggert, 43 N. J. 303; Gay v. Thompson, 266 N. C. 394.) A leading law review article on the subject has clearly pointed up the differences in the two situations (Gordon, The Unborn Plaintiff, 63 Mich. L. Bev. 579, 594-595):
‘ ‘ The hardship of many of the decisions denying relief [in prenatal injury cases] lay in the fact that they required an infant to go through life * * * bearing the seal of another’s fault. There is no such justification in the wrongful death situation. * * *
‘ ‘ A fundamental basis of tort law is the provision for compensation of an innocent plaintiff for the loss he has suffered. Tort law is not, as a general rule, premised upon punishing the wrongdoer. It is not submitted that the tortious destroyer of a child in útero *485 should be able to escape completely by killing instead of merely maiming. But it is submitted that to compensate the parents any further than they are entitled by well-settled principles of law and to give them a windfall through the estate of the fetus is blatant punishment. ’ ’
It is urged that, since a child en ventre sa mere is considered in being or alive for purposes of taking property and, in addition, is to some extent protected by the criminal and public health laws, it should likewise be so regarded and treated when injured in útero and, indeed, deemed a “ decedent ” under section 5-4.1 of the EPTL even when stillborn. However, as the court observed in Matter of Roberts (158 Misc. 698, 699), the property and other laws referred to were made “ solely for the protection of the child and not for the benefit of those who take through the child.” In point of fact, although an unborn child has certain rights under property law, his enjoyment of those rights is contingent upon his being born alive. As the court wrote in Matter of Peabody (5 N Y 2d 541, 547, supra) —where, relying upon Logan (3 N Y 2d 800, supra), we held that a child en ventre sa mere is not a person “ beneficially interested ” in an irrevocable trust within the meaning of section 23 of the Personal Property Law and hence his consent was not required for its revocation —it is only if “ the child [is] later born and able to take possession of the gift or inheritance ’ ’ that such a child is “considered born and living” (p. 546). In other words, even if, as science and theology teach, the child begins a separate “life” from the moment of conception, it is clear that, “ except in so far as is necessary to protect the child’s own rights ” (Matter of Roberts, 158 Misc. 698, 699, supra), the law has never considered the unborn foetus as having a separate “ juridical existence ” (Drabbels v. Skelly Oil Co., 155 Neb. 17, 22) or a legal personality or identity “ until it sees the light of day.” (Matter of Peabody, 5 N Y 2d 541, 547, supra.) Indeed, one court has noted that, although a child en venire sa mere may inherit, a stillborn child may not pass his estate to heirs or next of kin and there is no way that next of kin may assert a right to share in the child’s inchoate estate. (See, e.g., Hogan v. McDaniel, 204 Tenn. 235.) Translated into tort *486 law, this means that there is but a ‘ ‘ conditional prospective liability * * * created when an unborn child * * * is injured ” through the wrongful act of the defendant, and such liability attaches only upon fulfillment of the condition that the child be born alive. (Keyes v. Construction Serv., 340 Mass. 633, 636.)
It is argued that it is arbitrary and illogical to draw the line at birth, with the result that the distributees of an injured foetus which survives birth by a few minutes may have a recovery while those of a stillborn foetus may not. However, such difficulties are always present where a line must be drawn. To make viability rather than -birth the test would not remove the difficulty but merely relocate it and increase a hundredfold the problems of causation and damages. Thus, one commentator aptly observed that (Wenger, Developments in the Law of Prenatal Wrongful Death,, 69 Dickinson L. Eev. 258, 268), “ since any limitation will be arbitrary in nature, a tangible and concrete event would be the most acceptable and workable boundary. Birth, being a definite, observable and significant event, meets this requirement.”
In light of all these considerations, then, we do not feel that, on balance and as a matter of public policy, a cause of action for pecuniary loss should accrue to the distributees of a foetus stillborn by reason of the negligence of another; the damages recoverable by the parents in their own right afford ample redress for the wrong done. Decidedly applicable here is the rule that “ [1] lability for damages caused by wrong ceases at a point dictated by public policy or common sense.” (Milks v. McIver, 264 N. Y. 267, 269.) The whole problem of recovery for prenatal wrongful death has been well summed up by Harper and James in their treatise on the Law of Torts where they wrote (vol. 2, § 18.3, p. 1031):
“ Here, of course, the mother may recover for her injury including the miscarriage, and the only question is whether the estate of the unborn child may have a separate recovery. To allow it would recognize an interest in being born alive. And however great the spiritual and moral value of such an interest [in this connection, cf. Williams v. State of New York, 18 N Y 2d 481, concurring opn. of Keating, J., p. 485], its claim *487 to pecuniary compensation is far more tenuous and doubtful than that of the child who lives to bear the seal of defendant’s negligence with all the conscious suffering and economic loss it may entail. Few cases have allowed separate recovery where the child is not born alive, and perhaps this is the fairest and most practical place to draw the line. It, too, would make arbitrary distinctions— as between the child killed just before delivery and one who dies just after—but this sort of thing will be encountered wherever there must be a borderline.” (Emphasis supplied.)
Actions 3 and 4
We do not have before us the counts in these two actions which, upheld by Special Term, allege damage to the parents in their own right (the mother’s physical injuries and mental suffering, the father’s loss of her services and consortium). We are concerned only (1) with their claims for loss of the “ care, comfort, companionship, future society, aid * * * and services ” of the two unborn children and their right to compensation insofar as they have ‘ ‘ been otherwise damaged ’ ’ and (2) with Mr. Endresz’s claim for medical, hospital and funeral expenses in connection with their deaths.
We may immediately eliminate the claim for loss of services, since ‘1 loss of services ’ ’ is included in the category of pecuniary loss (see, e.g., Graf v. Taggert, 43 N. J. 303, 308, supra) for which, as we have just seen, distributees of a stillborn foetus may not recover under the wrongful death statute. As indicated, however, the parents do not go completely unrecompensed. If the defendants herein were negligent, Mrs. Endresz may recover for the injuries she sustained, both physical and mental, including the emotional upset attending the stillbirths.[3] And the plaintiff Steve Endresz retains his derivative action for the loss of her services and consortium. In addition, funeral expenses flowing, as they do, directly from the injuries sustained *488 by his wife, are compensable, and Mr. Endresz, who seeks these damages — and presumably has paid the funeral bill—is entitled to claim the relief requested.[4]
Neither party, however, may recover for the loss of offspring, as such—that is, for the effect of the stillbirths in depriving them of children or of their companionship. (See, e.g., Berg v. New York Soc. for Relief of Ruptured & Crippled, 136 N. Y. S. 2d 528, revd. on other grounds 286 App. Div. 783, revd. on other grounds 1 N Y 2d 499; Butler v. Manhattan Ry. Co., 143 N. Y. 417, 421-422, supra; Witrak v. Nassau Elec. R. R. Co., 52 App. Div. 234, 236; see, also, Gilbert v. Stanton Brewery, 295 N. Y. 270.) What the court wrote in the Witrak case (52 App. Div. 234, supra) points the conclusion here (p. 236):
“ The plaintiff is entitled to recovery for the physical injury which she has sustained, and for the pain and suffering which she has endured and will endure as a result of the defendant’s negligence. So far as a miscarriage or the delayed delivery of a stillborn child augments the mother’s physical injury, pain or suffering, so far is it proper tobe considered on the question of damages; but its effect in depriving the mother of offspring cannot be taken into account as an element of damage at all. In a husband’s suit for damages arising out of a personal injury to his wife, as a result of which she suffered a miscarriage, it has been expressly held that nothing can be recovered by the husband on , account of the loss of offspring. The injury is too remote and speculative. (Butler v. Manhattan R. Co., 143 N. Y. 417.) ” (Emphasis supplied.)
Accordingly, the plaintiffs are not entitled to damages for the loss of their offspring and the second and third counts of Actions No. 3 and No. 4 were properly dismissed.
Stare decisis does not, of course, compel us to perpetuate an unjust rule “ out of tune with the life about us ”. (Bing v. *489 Thunig, 2 N Y 2d 656, 667.) On the other hand, we should not depart from sound precedent simply for the sake of change or merely because other courts have arrived at a result different from that which we have espoused. In the case before us, we deem it the fairest and most practical solution of the problem presented, the one most in accord with the dictates of justice, public policy and common sense, to leave the parents of a stillborn foetus, whose death has been caused by a third party’s wrongful act, to the damages recoverable by them in their own right and to deny to the distributees any redress by way of a wrongful death action.
The order appealed from should be affirmed, without costs.

. See, e. g., Norman v. Murphy, 124 Cal. App. 2d 95; Keyes v. Construction Serv., 340 Mass. 633; Powers v. City of Troy, 4 Mich. App. 572; Drabbels V. Skelly Oil Co., 155 Neb. 17; Graf v. Taggert, 43 N. J. 303; Gay v. Thompson, 266 N. C. 394; Padillow v. Elrod, 424 P. 2d 16 [Okla.]; Carroll v. Skloff, 415 Pa. 47; Kogan v. McDaniel, 204 Tenn. 235.

. Worgan.v. Greg go & Ferrara, 50 Del. 258; Hale v. Manion, 189 Kan. 143; State, Use of Odham v. Sherman, 234 Md. 179; Verkennes v. Corniea, 229 Minn. 365; Rainey v. Horn, 221 Miss. 269; Gullborg v. Rizzo, 331 F. 2d 557 [Pa.]; Fowler v. Woodward, 244 S. C. 608; Kwaterski v. State Farm Mut. Auto. Ins. Go., 34 Wis. 2d 14.

. Such damages are to be distinguished from those held recoverable in Ferrara V. Galluchio (5 N Y 2d 16) and Battalla v. State of New York (10 N Y 2d 237), based on fright or fear of physical harm. The Appellate Division, therefore, correctly reversed so much of the order of Special Term as gave the plaintiffs leave to plead over on the theory of those eases.

. This does not save the second and third counts of his action, however, for such claim is more properly made in his first cause of action for damages which is still before the trial court. His request, though, for medical and hospital expenses by reason of the prenatal deaths must be denied since they are duplicative of those sought and recoverable by his wife in the first cause of action in her suit.