The People of the State of New York, Respondent, *v.* Leonard Felder, Appellant.

Fourth Department, October 31, 1974.

*Alfred P. Kremer* for appellant.

*Jack B. Lazarus, District Attorney (Christopher J. Enos* of counsel), for respondent.

Moule, J. P.  Anderson, Brunson and others were the participants in a card game in the back room of a pool hall in Rochester on the evening of March 21, 1972.  Brunson was a winner and Anderson a loser.  Anderson, after having lost all of his money, left the premises and in 30 minutes returned with defendant and they both stood about eight feet from Brunson.  Anderson saw that Brunson had about $400 in his hand and said to defendant, " We got to have that money " and defendant walked to about three feet from Brunson.  After hearing this, Brunson was told by a spectator that " this Joe is going to take your money." Brunson then jumped on a table and then ran out the door. After about 20 feet, he began to walk until he saw the defendant come out the door, when he began to run again.  The defendant chased Brunson and shouted, " Nigger, drop that money." When defendant was catching up to Brunson, the latter turned and defendant pulled a pistol out of his jacket and shot Brunson three times.

The trial court improperly received Brunson's testimony about the statement made by a spectator to him which warned that Anderson and defendant were going to take his money. However, this error does not require a new trial.  The Court of Appeals has stated: "Errors are almost inevitable in any trial,

improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial. On review, the court's inquiry must be directed toward determining whether the claimed defect influenced the jury and tainted its verdict. If the record demonstrates that it did not, then, the defendant is not entitled to a second trial." (*People* v. *Kingston*, 8 N Y 2d 384, 387.)

The circumstances surrounding the assault established beyond any reasonable doubt that the defendant's motive was robbery even without considering the inadmissible hearsay. The record establishes that Brunson was just leaving a card game in which he won a large amount of money and that defendant knew that Brunson had this money. Further, during the chase, Brunson heard defendant shout for him to drop his money. The crimes committed were of a violent nature and the evidence fully supports the jury's verdict, and therefore the admission of the evidence complained of was harmless error (*Brown* v. *United States*, 411 U. S. 223, 231).

The judgment should be affirmed.

CARDAMONE, J. (dissenting). The appellant was convicted on two counts of attempted robbery and two counts of assault on evidence improperly admitted at the trial. On March 21, 1972 the victim, Joe Brunson, Jr. arrived at a pool hall in Rochester, where he joined a card game. Later, one of the other players, Poncho Anderson, who had lost all his money, left the card room and then returned accompanied by the appellant, Leonard Felder. The two of them stood about eight feet from Brunson who was still at the card table with $400 in his hands. Brunson was permitted to testify on direct and redirect, over strong defense counsel objection, that Anderson said to appellant, Felder, "We got to have that money". According to Brunson, appellant then moved toward him. In describing the situation Brunson was permitted, again over objection, to testify as to what a bystander, C. J. Nelson, said, as follows: "Q. You can state what C. J. Nelson said to you. Say that in a loud voice, please. A. Well, C. J. Nelson told me this Joe is going to take your money." On redirect Brunson further stated that: "C. J. Nelson said, Joe, I think they're planning to rob you." The victim Brunson subsequently jumped on the card table and later ran out the door of the pool hall. He testified that "pretty soon" appellant came out the door after him. Brunson began to run and appellant ran after him yelling, "Nigger, drop that money". He stated that appellant caught up to him in the parking lot and shot him in the chest, shoulder and head.

The only witness produced by the prosecution was the victim, Brunson. Neither Poncho Anderson nor C. J. Nelson was called as a witness at the trial. The appellant testified in his own behalf that Brunson jumped on the table declaring that he would not pay anyone, that Brunson had a knife in his possession, and that appellant then ran out of the pool hall.

In permitting Brunson to testify respecting Anderson's remark the trial court ruled that "It may be stated as simply part of the entire picture", and with respect to C. J. Nelson's comment held that "This goes to possible motivation for what defendant did." Such rulings were erroneous. The only arguable basis for admitting these statements into evidence was as a spontaneous declaration or under the doctrine of *res gestae.* These utterances were not either of these. Before a statement can be admitted as a spontaneous declaration it must be shown to be the impulsive and unreflective response of the declarant to some startling event (6 Wigmore, Evidence [3d ed.], §§ 1745–1750; Richardson Evidence [10th ed.], § 281). Anderson's statement, "We got to have that money", is plainly a statement which evidenced Anderson's intent or state of mind. To the extent that it might have been offered to establish the truth of the assertion stated in it, it cannot, on this record, be construed as spontaneous and unreflective. On the contrary, Anderson's statement is reflective, having come some time after he had an opportunity to consider his own losses and Brunson's good fortune at cards. Accordingly, it is not admissible as a spontaneous declaration. The statement of C. J. Nelson might have been properly received because the utterance "This Joe is going to rob you", could be construed to be an involuntary statement similar to the one admitted in *People* v. *Del Vermo* (192 N. Y. 470) where the victim exclaimed to a witness bystander several moments after the event, "Del Vermo stabbed me". However, sufficient facts with respect to the imminence of the robbery, e.g., production of a weapon accompanied by threatening gestures, acts or words, are lacking in this record. Indeed, the record is barren of any fact respecting an attempted robbery other than Nelson's statement testified to by Brunson which stands, therefore, merely as a conclusion or prophetic opinion as to future events. In brief, there is not a sufficient foundation to establish the startling event in the pool hall within which a spontaneous declaration could occur.

Anderson's and Nelson's statements were not admissible as a part of the *res gestae. Res gestae* means, literally, things done. It is usually offered to explain conduct or an act which

is ambiguous. The statement comes in merely as a verbal part of the act. Since the words are not used testimonially, i.e., as evidence of the truth of the fact asserted in them, the hearsay rule has no application. (6 Wigmore, Evidence [3d ed.], § 1745; *People* v. *Marks*, 6 N Y 2d 67, 71, cert. den. 362 U. S. 912; *People* v. *Del Vermo*, 192 N. Y. 470, 483–487, *supra*.) In order for the statement to be received into evidence, however, the equivocal conduct which it purports to explain must be a relevant and material issue in the case, and the words of the statement, since they elucidate conduct, must be by the actor and not another person (6 Wigmore, Evidence [3d ed.], § 1755). This plainly follows because a mere bystander is not associated with the act or its happening, and consequently his exclamations are not logically part of the verbal act or *res gestae* and should not be admissible (*Butler* v. *Manhattan Ry. Co.*, 143 N. Y. 417, 422–423; *Ehrhard* v. *Metropolitan St. Ry. Co.*, 69 App. Div. 124, 125–126). As noted by Judge HOLMES (then Chief Justice of Massachusetts), "It is not the law that any and all conversation which happens to be going on at the time of an act can be proved if the act can be proved" (*Commonwealth* v. *Chance*, 174 Mass. 245, 251). This is precisely the situation here. Anderson and Nelson were not participants insofar as this record reveals but were merely bystanders. Their conversation and statements, therefore, could not be part of the *res gestae*.

The receipt of this evidence at the trial was an error which must have influenced the jury and tainted its verdict, since Brunson was the only witness the jury heard respecting the events at the time these crimes were committed. Its effect was compounded when the trial court ruled that Nelson's utterance testified to by Brunson was received as bearing on the appellant Felder's possible motivation with respect to the attempted robbery and assault. Considering the fact that proof in the record is far from overwhelming, it must be concluded that there is a likelihood that the appellant's rights were prejudiced (see *People* v. *Kingston*, 8 N Y 2d 384, 387, *supra*). The proper test where evidence is erroneously received is that it cannot be considered harmless when there exists "a reasonable possibility that the evidence complained of might have contributed to the conviction" (*Fahy* v. *Connecticut*, 375 U. S. 85, 86–87, cited with approval in *People* v. *Steiner*, 30 N Y 2d 762, 763). Of course, in this regard the burden is on the prosecution to show that the errors are unprejudicial beyond a reasonable doubt (*People* v. *Steiner*, p. 764). Such is not the case on this record.

Accordingly, I dissent and vote to reverse the judgment of conviction and grant appellant a new trial (*People* v. *Steiner, supra; People* v. *Arnold*, 41 A D 2d 573, 574).

SIMONS, MAHONEY and GOLDMAN, JJ., concur with MOULE, J. P.; CARDAMONE, J., dissents and votes to reverse the judgment and grant a new trial in an opinion.

Judgment affirmed.