OPINION OF THE COURT
Eugene P. Bambrick, J.
Can the plaintiff mother of a stillborn child, who alleges that she was caused to suffer and endure excruciating pain and unnecessary injury and delay by reason of the malpractice of the defendants, recover for any alleged emotional and psychic harm resulting from the stillborn birth?
This is one of the intriguing questions that the court must address in this motion by the defendants Hip Hospital, Inc., Dr. Allen and Dr. Edeisheim for an order pursuant to CPLR 3212 of summary judgment dismissing this case for failure to state a cause of action cognizable under New York law.
It appears that this medical malpractice action arises from the obstetrical care rendered to the plaintiff Asghari Khan at La Guardia/Hip Hospital (hereinafter referred to as defendant hospi *1064 tal) on June 2, 1981. On that date the plaintiff Mrs. Khan was delivered of a stillborn fetus at the defendant hospital.
The plaintiffs allege that while plaintiff Mrs. Khan was a patient at defendant hospital and under the care of various defendant physicians attending to her pregnancy and her delivery, the defendants were guilty of malpractice in failing to properly anticipate a footling breech delivery and provide competent physicians to deal with an emergency created at the time of birth. It is further alleged in plaintiffs’ bill of particulars that the defendants should have delivered the child by Caesarean section. Instead, it is contended, that the defendants chose a vaginal delivery which delayed delivery, and was extremely painful by reason of bilateral nuchal arms. As noted in the hospital records annexed to the motion papers, this delivery also involved the unsuccessful use of Piper forceps, cervix stretching and super pubic pressure. Accordingly, the plaintiffs allege in the first cause of action of the complaint that “[sjolely by reason of the carelessness, negligence and medical malpractice of defendants, and each of them, in the medical care, treatment and services rendered to plaintiff, Asghari Khan, and her infant child being delivered, was caused to suffer and sustain severe and serious physical, emotional and mental injuries”.
In the plaintiffs’ second cause of action, it is further alleged that the defendants failed to obtain the informed consent of the plaintiff Asghari Khan regarding the consequences of the defendants’ actions during the delivery.
The third cause of action by the plaintiff Mohammed Khan is a derivative one for the alleged loss of services of his wife, Asghari Khan.
The movant defendants submit that under New York law, there is no cause of action for emotional harm resulting indirectly through the reaction of a plaintiff to injury caused to another, and, therefore, the plaintiffs’ case, as predicated on Mrs. Khan’s emotional injuries resulting from the stillborn birth must be dismissed pursuant to CPLR 3212.
The defendants contend that the plaintiff Asghari Khan is in effect claiming only those indirect emotional injuries, as evidenced by her response in the bill of particulars to a demand for the damages claimed, as follows: “Delivery of stillborn child after enduring all the pains and discomforts of full term child bearing and delivery; severe emotional trauma, including depressive reaction”.
It is recognized by the defendants that there are situations where a cause of action may be stated for emotional harm resulting directly to a plaintiff from the negligence of another. *1065 In Johnson v State of New York (37 NY2d 378), for example, recovery was permitted where the defendant hospital had negligently sent a false message to the plaintiff announcing her mother’s death. Similarly, in Battalla v State of New York (10 NY2d 237) recovery was permitted where the infant plaintiff had suffered emotional trauma as the result of the defendant’s failure to secure the restraining belt on a chairlift occupied by the plaintiff.
On the other hand, defendants argue that no cause of action is stated in the instant action, where emotional harm results indirectly through the reaction of the plaintiff to injury negligently caused to another. The defendants cite the following cases as illustrative of this New York rule: Lafferty v Manhasset Med. Center Hosp. (54 NY2d 277), where the plaintiff suffered emotional distress when she witnessed a negligently performed blood transfusion; Vaccaro v Squibb Corp. (52 NY2d 809), where drugs administered to the mother during her pregnancy caused serious birth defects to her child, resulting in emotional injury to the mother and father; Becker v Schwartz (46 NY2d 401) and Howard v Lecher (42 NY2d 109), where the plaintiffs suffered emotional distress because of birth defects to their children caused by negligent medical treatment given to the mothers; and Tobin v Grossman (24 NY2d 609), where the mother sustained emotional trauma when she heard the defendant’s automobile strike her child. In all these cases, the mental and emotional injuries experienced by a “bystander” as a consequence of direct injuries to another were not recoverable.
To reinforce their position, the movant defendants cite two recent Appellate Division, Second Department, cases which dismissed claims allegedly identical to the claim presented herein. In Friedman v Meyer (90 AD2d 511-512, appeal dismissed 59 NY2d 763), the court stated: “Plaintiffs allege that due to the negligence of defendants, or because of actions taken by them without the plaintiff wife’s informed consent, the plaintiff wife was caused to deliver a stillborn infant. No physical injuries are claimed. Rather, the plaintiff wife seeks to recover solely for mental or emotional injuries and her husband seeks to recover for the loss of his wife’s services. Special Term denied defendants’ motions for summary judgment. We reverse. It is by now well established that even assuming the death of the fetus in útero was caused by defendants’ wrongful acts, absent independent physical injuries, the plaintiff wife may not recover for emotional and psychic harm as a result of the stillborn birth (see Vaccaro v Squibb Corp., 52 NY2d 809; Becker v Schwartz, 46 *1066 NY2d 401; Howard v Lecher, 42 NY2d 109; see, also, Lafferty v Manhasset Med. Center Hosp., 54 NY2d 277; Aquilio v Nelson, 78 AD2d 195).”
In another very recent Appellate Division case, Farago v Shulman (104 AD2d 965), the plaintiff mother sought to recover damages for medical malpractice resulting in the stillbirth of her child, in addition to blood loss and pain for an allegedly improper performance of an episiotomy and its subsequent repair. The court ruled:
“In the case at bar, it is not claimed that the alleged malpractice which resulted in the physical injuries alleged in the amended bill of particulars in any way caused the stillbirth * * * ‘absent independent physical injuries, the plaintiff wife may not recover for emotional and psychic harm as a result of the stillborn birth ***’
“In the instant case, the episiotomy was merely another aspect of the childbirth procedure itself, but was not a cause of the stillbirth so as to warrant recovery” (supra, p 966).
The movant defendants argue that pursuant to Friedman and Farago (supra), the plaintiff herein may not recover solely for emotional injuries caused by a stillbirth, and also may not recover for “merely another aspect of the childbirth procedure itself” where there is no real injury alleged. It is the position of the movants that “every layman knows that the act of birth is routinely painful”, and that the plaintiff Mrs. Khan did not suffer any “independent physical injuries”. The movants attempt to bolster this position by maintaining that a review of the hospital records will show that the plaintiff Mrs. Khan was under general anesthesia for the delivery, and, therefore, cannot claim any independent physical injuries.
It would appear to this court that as cogent as these arguments of the movant defendants are, they are in fact “routine”, and a careful analysis of the alleged circumstances of this case will clearly distinguish the law to be applied in this case from the others.
In Endresz v Friedberg (24 NY2d 478), the plaintiff, seven months pregnant, was injured in an automobile accident and two days later was delivered of stillborn twins. Although this decision is most known for its ruling that distributees of a stillborn fetus may not recover under the wrongful death statute, there is another important torts’ rule presented therein, as follows: “As indicated, however, the parents do not go completely unrecompensed. If the defendants herein were negligent, Mrs. Endresz may recover for the injuries she sustained, both *1067 physical and mental, including the emotional upset attending the stillbirths. And the plaintiff Steve Endresz retains his derivative action for the loss of her services and consortium.” (Endresz v Friedberg, 24 NY2d 478, 487, supra.)
This rule is elaborated therein as follows:
“What the court wrote in the Witrak case (52 App. Div. 234, supra) points the conclusion here (p. 236):
“ ‘The plaintiff is entitled to recovery for the physical injury which she has sustained, and for the pain and suffering which she has endured and will endure as a result of the defendant’s negligence. So far as a miscarriage or the delayed delivery of a stillborn child augments the mother’s physical injury, pain or suffering, so far is it proper to be considered on the question of damages’ ” (Endresz v Friedberg, supra, p 488).
This court has reviewed the defendant hospital’s labor and anesthesia records of the plaintiff Mrs. Khan, dated June 2, 1981, annexed to the motion papers, and has noted the following pertinent information: “Course of Labor: Patient brought to Delivery Room for delivery by Drs. Edeisheim and Kayani at 7:30; position double footling station * * * Patient was thought to be fully dilated and was pushing. Fetal heart documented * * * at 7:55 AM * * * Delivery completely unassisted until body at level of umbilicus with prolapse of the cord. Examination at this time revealed bilateral nuchal arms. Attempt at delivery of shoulders unsuccessful by Dr. Kayani. Patient put to sleep with Penthrane, Nitrous and Oxygen and Dr. Dillon paged * * * further attempt at delivery of nuchal arms unsuccessful * * * Attempt to place Piper forceps unsuccessful. Cervix stretched. Delivery of vertex accomplished via supra pubic pressure * * * Infant stillborn”.
The labor record further indicated the following: “Stillbirth, Cause: Prolapsed cord; prolonged delivery”.
It is clear from both the labor and anesthesia records that the plaintiff Mrs. Khan was brought to the delivery room at 7:30 a.m., and was first put to sleep at 8:15 a.m., and at 8:28 a.m. the infant was stillborn. It is apparent from the hospital records that the plaintiff Mrs. Khan was conscious and awake during most of the procedure in the delivery room.
Under the circumstances of this case, where it is alleged that the plaintiff Mrs. Khan independently suffered and endured excruciating pain and unnecessary injury, apart from the “routine” pains of childbirth, due to the negligence of the defendants in failing to properly anticipate a footling breech delivery, in not *1068 performing a Caesarean section, and in failing to provide competent physicians to deal with the emergency at the time of birth, the plaintiff Mrs. Khan was not merely a “bystander” but was as much a victim of the defendants’ alleged malpractice as the stillborn fetus. Just as in Endresz v Friedberg (supra), where negligence related to an automobile accident resulted in injuries to the plaintiff, including the stillbirth of the twins she was carrying, so here, it is alleged that the medical malpractice of the defendants by delaying and prolonging delivery resulted in injuries to the plaintiff Mrs. Khan as well as the stillbirth of her child. Unlike Friedman v Meyer (90 AD2d 511, supra), the plaintiff herein is claiming independent physical injuries; and unlike Farago v Shulman (104 AD2d 965, supra), the alleged malpractice herein, involving a delayed and prolonged delivery, was not merely an incidental aspect of the childbirth procedure itself, but is alleged to have been the cause of the stillbirth as well as having caused independent physical injuries to the plaintiff.
For these reasons alone, the court finds that there are triable issues cognizable under New York law which preclude summary disposition. If in fact the plaintiffs are able to prove that the plaintiff Mrs. Khan suffered independent physical injuries as a result of the defendants’ malpractice, then she would also be entitled to recover for any alleged mental injuries she sustained, including any emotional injuries attending the stillbirth, allegedly caused by the same malpractice, as a concomitant to the actual physical injuries she had suffered during the prolonged delivery.
The second cause of action is for the alleged lack of informed consent of the stillborn’s mother, and should not be summarily dismissed. Of course, it is well settled that an injured child has a right to an independent cause of action against a physician for in útero injuries stemming from the physician’s failure to obtain an informed consent only upon birth. (See, Hughson v St. Francis Hosp., 92 AD2d 131, 137; Shack v Holland, 89 Misc 2d 78; see also, Wool, Informed Consent: An Unborn’s Right, 48 Alb L Rev 1102, 1116 [1984].) Since we are dealing with a stillbirth, the second cause of action relates only to the stillborn’s mother.
The third cause of action by plaintiff Mohammed Khan for the alleged loss of services of his wife also should not be dismissed. (See, Endresz v Friedberg, 24 NY2d 478, 487-488, supra.)
THE IMPLICATIONS OF BOVSUN V SANPERI
Until now, this court has indulged in an analysis of plaintiffs’ complaint, viewing the mental and emotional injuries as being *1069 based on actual physical injuries sustained by the plaintiff mother, and, as such, can be labeled as “parasitic” damages. (See, Prosser and Keeton, Torts, at 363 [5th ed]; 2 Harper and James, Torts, at 1032.) Although the “impact” rule — which permits recovery only if the plaintiff can show that he suffered some contemporaneous physical impact in conjunction with the mental suffering — was the majority opinion for many years in various jurisdictions, New York has for some time now rejected it in favor of the “zone of danger” test. (Battala v State of New York, 10 NY2d 237, supra; see also, Tobin v Grossman, 24 NY2d 609, supra; 25 Hastings LJ 1248.) Recently in Bovsun v Sanperi (61 NY2d 219, 223-224), the Court of Appeals reaffirmed the “zone of danger” rule, as follows: “Where a defendant’s conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant’s conduct on a member of the plaintiff’s immediate family in his or her presence, the plaintiff may recover damages for such injuries.”
The Bovsun court explained this rule as being premised on the traditional negligence concept that “by unreasonably endangering the plaintiff’s physical safety the defendant has breached a duty owed to him or her for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of an immediate family member who is also injured by the defendant’s conduct.” (Bovsun v Sanperi, supra, p 229; see also, Note, 59 St. John’s L Rev 201 [fall 1984].) The Court of Appeals notes that the “zone of danger” rule has become the majority rule in this country, and in a footnote cites many cases typifying this rule, including one especially similar to this case, Vaillancourt v Medical Center Hosp. (139 Vt 138, 425 A2d 92) (see, Bovsun v Sanperi, supra, p 229, n 6). In Vaillancourt, the plaintiff mother alleges that due to the medical malpractice of the defendants, the fetus was stillborn, and that she “suffered such distress, with resultant substantial bodily injury, from witnessing the events which transpired, i.e., the neglect resulting in the fetal death” (supra, 425 A2d, at p 95). The court then restated the rule that recovery for negligently caused emotional distress, not accompanied by physical impact is allowable, subject to the limitation that the plaintiff himself had been within the “zone of danger” and subject to a reasonable fear of immediate personal injury. Specifically applying this rule to the fact pattern similar to our own case herein, the Vaillancourt court proclaimed that the plaintiff mother is entitled to recover for the *1070 emotional distress, based on the following: “With the fetus as yet unborn, she was necessarily within the zone of danger and subject to a reasonable fear for her own safety.” (Vaillancourt v Medical Center Hosp., supra, p 95; see also, 2 Louisell & Williams, Medical Malpractice, at 18-37.)
According to this Bovsun-Vaillancourt analysis, the plaintiff mother need not prove “independent physical injuries” but may recover for emotional and psychic harm as a result of the stillborn birth if she is found to have been within the “zone of danger” and subject to a reasonable fear of immediate personal injury.
It is the opinion of this court that the factual situation herein even, “absent independent physical injuries”, would allow the plaintiff mother to recover for emotional distress, in accordance with the “zone of danger” rule. According to plaintiff’s allegations, she was subject to an unreasonable risk of bodily injury by negligent conduct on the part of the defendants.
This court further finds that for the purposes of the “zone of danger” rule, a stillborn fetus is a “member of the immediate family” of the plaintiff. We have long rejected Dietrich v Inhabitants of Northampton (138 Mass 14 [1884]), which did not recognize a fetus as a separate entity apart from its mother, and have instead accepted after Bonbrest v Kotz (65 F Supp 138 [1946]), the following statement of Woods v Lancet (303 NY 349, 357): “To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact.” (See also, Damages in Tort Actions, at 18-3 et seq. [Matthew Bender 1984].) Kelly v Gregory (282 App Div 542, 543-544) went a step further and rejected the viability requirement as follows:
“legal separability should begin where there is biological separability * * *
“The mother’s biological contribution from conception on is nourishment and protection; but the foetus has become a separate organism and remains so throughout its life.” Thus, as far as genuine emotional attachment to a member of an immediate family is concerned, the phenomenon of birth is not the beginning of life, but is merely a change in the form of life. (Winborne, Handling Pregnancy and Birth Cases, at 357 [McGraw-Hill 1983].) Birth is a major event in the development of a human being, but it is certainly not the beginning of his or her parent’s love and concern. Mental anguish and grief are experienced by parents whether or not a viable fetus survives to full term. (Moen v Hanson, 85 Wn 2d 597, 537 P2d 266 [1975].) *1071 The mental pain and. suffering of the parents of a stillborn child may be as great as that of parents whose child dies after birth. (Miller v Highlands Ins. Co., 336 So 2d 636 [Fla 1976].)
Finally, this court finds that the plaintiff mother herein, Mrs. Khan, is alleging emotional distress as a result of her “contemporaneous observation of the death of a member of the immediate family”, i.e., the emotional distress as a result of the stillborn birth. Unlike Tebbutt v Virostek (102 AD2d 231), where the plaintiff did not become aware of any problem with the fetus for several weeks after the alleged negligence of the defendant in the performance of an amniocentesis, the case herein involves a plaintiff mother who was awake and conscious and subject to a reasonable fear of immediate personal injury during a prolonged delivery, and after anesthesia regains consciousness and becomes immediately aware of the stillborn birth, only a short time after its actual occurrence. The hospital record progress notes, annexed to the motion papers, indicate Mrs. Khan’s first request: “Can I see my baby?” and, thereafter, she was taken “in wheelchair to see fetus in Morgue”. To this court, the circumstances described above constitute a contemporaneous observation of the stillborn birth by the plaintiff mother Mrs. Khan. As noted in Hambrook v Stokes Bros. (1 KB 141, 152 [1925]), contemporaneousness should not require that plaintiff witness the impact. (See also, 43 NYU L Rev 1252, 1255.)
In Haught v Maceluch (681 F2d 291 [1982]), the United States Court of Appeals dealt with a case strikingly similar to the one herein. The plaintiff mother was conscious during most of labor, and allegedly suffered emotional distress resulting from the birth of her child in a defective condition. The court noted, as we have already noted, that: “Not only was appellant located near the scene of the accident, she was in some sense the scene itself. Dr. Maceluch’s negligent conduct was visited upon her and upon the child within her body; no closer proximity can be imagined. And the appellant and the victim were closely related — indeed, as a mother and child in childbirth their relationship was unitary” (supra, at p 299).
As here, the court found that the mother contemporaneously perceived the tragic birth. First it quoted Landreth v Reed (570 SW2d 486, 490 [Tex]), as follows: “ ‘[i]n the modern view, actual observance of the accident is not required if there is otherwise an experiential perception of it, as distinguished from a learning of it from others after its occurrence’ ” (p 301).
Then, the court applied this “temporal proximity” rule (see, Prosser and Keeton, Torts, supra, at 366) to the facts in a way *1072 which is especially appropriate to the facts herein: “Indeed, this Court can imagine no more integral an experience than that of a mother giving birth to a child through a protracted and difficult labor and delivery * * * She perceived that something was wrong, wrong enough to cause her to fear for her child’s life * * * In short, appellant had an ‘experiential perception’ of the accident.” (Haught v Maceluch, supra, p 301.)
It is finally to be noted that in Bovsun (supra) the plaintiffs also did not actually see the members of their immediate family being injured.
For all the above reasons, this court finds that the plaintiff mother Mrs. Khan, even “absent independent physical injuries”, has satisfied the Bovsun criteria (supra), and her claims are cognizable under the New York “zone of danger” rule. Accordingly, if these claims are substantiated by the evidence upon trial, plaintiff Mrs. Khan would be entitled to recover for her asserted emotional distress and mental injuries.
The triable issues of fact that have been raised should not be summarily dismissed. (See, Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395.)
The motion by the defendants, Hip Hospital, Inc., and Drs. Allen and Edeisheim, for summary judgment is denied.