**In re JOINT EASTERN and SOUTHERN DISTRICT ASBESTOS LITIGATION.**

**Frank RUMMO and Betty Rummo, Plaintiffs,**

v.

**The CELOTEX CORPORATION, Defendant.**

No. CV–87–2173.

United States District Court, E.D. New York.

Dec. 7, 1989.

Jay W. Dankner, Abby J. Resnick, Sullivan & Liapakis, P.C., New York City, for plaintiffs.

David Speziali, Speziali & Constantine, Newfield, N.J., for defendant.

### MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiff is dying of mesothelioma, a dread cancer of the lining of the lungs, as a result of his work with asbestos thirty years ago in the Brooklyn Navy Yard. He

has less than one year to live. He cannot work. Were it not for this disease, this 53 year-old man would have a work-life expectancy of some twelve years. The question posed is whether his loss of future income should be based on the one year he may live or the many years he could have lived were it not for the defendant's delict in supplying asbestos without warning workers of the dangers.

The court instructed the jury to make alternative findings of fact. Based on present work-life expectancy it fixed loss of earnings at $45,000.00. Based on work-life expectancy not reduced by mesothelioma it awarded $775,000.00. Both sums are supported by the trial record.

## I.  *Principles of Compensation*

This is a diversity case. New York law applies. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But this state's highest courts have not definitively analyzed the issue in published opinions. We turn therefore to the general law of torts, as would New York's highest court. *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916) (Cardozo, J.). "[U]nderlying principles, with whatever qualification may be called for as they are applied to varying conditions, are the tests and standards of our law." *Id.* 111 N.E. at 1053.

### A.  Actions by Injured Party

A primary goal of the American law of torts is to adequately and justly compensate personal injury victims. Compensatory damages include the loss or impairment of earning capacity. 22 Am.Jur.2d *Damages* § 157 (1988); 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 25.8 (2d ed. 1986); 2 S. Speiser, C. Krause and A. Gans, *The American Law of Torts* § 8:27 (1985); 4 Restatement (Second) of Torts § 924, comments c & d (1979). Damages are computed by measuring the monetary value of the diminution in the plaintiff's annual earning capacity, multiplying that amount by the number of years the plaintiff could have worked—his work-life expectancy—and then discounting that

amount to present value. *See* 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 10.23 (1989); 4 F. Harper, F. James Jr. & O. Gray, *The Law of Torts* § 25.8 (2d ed. 1986); 2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 8:27 (1985).

The problem of whether to use pre- or post-injury life expectancy when calculating personal injury damages has been largely neglected until recently because medical knowledge was not sufficiently advanced to permit a reliable estimate of reduced life expectancy. Improvements in medical technology, demographics and statistics now allow that estimation to be made with sufficient accuracy to satisfy legal standards. Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages,* 50 Cal.L.Rev. 598, 599–600 (1962).

Given the possibility of accurate projections, it is desirable to think of a worker's earning capacity as equivalent to work-capital. Adjusting for such factors as increased skills, demand for the worker's services, and inflation, that capital is depleted as life advances. An injury that reduces the period of work-life expectancy deprives the worker of the value of work-capital. By awarding damages for lost earning capacity, we are, in effect, compensating the worker for the shortening of his or her "economic horizon." 2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 8:27, at 628 (1985).

The Restatement (Second) of Torts may be read to support compensation to the victim directly for loss of work-capital. It states that anticipated losses of earnings should be calculated for "the expected working period that the plaintiff *would have had* during the remainder of his prospective life, *but for the defendant's act.*" 4 Restatement (Second) of Torts § 924, comment d at 525 (1977) (emphasis supplied).

The Restatement (Second) of Torts indicates one way of calculating that life expectancy by use of statistical tables:

[I]n order to ascertain the damages, to determine the expectancy of the injured

person's life at the time of the tort ... it is permissible to use mortality tables and other evidence as to the *average life expectancy of a large number of persons.*

*Id.* comment e, at 526 (emphasis supplied).

Speiser, Krause and Gans note:

Work life expectancy is an important factor in determining an injury victim's damages from loss or impairment of future earning capacity.

2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 8:27, at 632 (2d ed. 1985). Building on the possibility of prediction, these authors strongly urge compensating the living victim for the loss of his or her work-capital. They write that:

damages for decreased earning capacity should be determined by deducting the injury victim's earning *ability* after the injury from his earning *ability* immediately prior to the injury.

*Id.* at 630. Earning ability prior to the injury must be calculated based on the victim's pre-injury life expectancy.

Calculating damages for lost earning capacity based on the victim's pre-injury life expectancy has been criticized as overcompensating the plaintiff, because no deductions are made for his or her living expenses between the time of projected actual death and the time death probably would have occurred had there been no injury. It has been viewed, however, as the "lesser of two evils." The alternative method of awarding damages based on the victim's shortened life expectancy would, in effect, reward the defendant for having successfully injured the plaintiff so severely as to curtail his or her life span, and would under-compensate plaintiff's dependents for the loss of support during those lost years. 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 25.8, at 552 n. 9 (2d ed. 1986); Note, *The Measure of Damages For a Shortened Life*, 22 U.Chi.L.Rev. 505, 505–06 (1955). "It is permitting a defendant to assert the excessiveness of his own tort to escape paying full compensation for the injury." Note, *The Measure of Damages For a Shortened Life*, 22 U.Chi.L. Rev. 505, 506 n. 6 (1955) (quoting *Olivier v.*

*Houghton County Street Ry.*, 138 Mich. 242, 244, 101 N.W. 530, 531 (1904)). As between some unfairness to the tort-feasor and gross under-compensation to the victim, the former seems more appealing to our sense of justice.

### B. Relation to Death Actions

Addressing the legal problem requires consideration of damages awarded in a death action brought for loss to the estate because of the worker's untimely death, as well as damages awarded in a suit by a victim commenced during his or her lifetime. Damages for the period by which the victim's life has been curtailed have traditionally been awarded in wrongful death actions. 1 S. Speiser, *Recovery for Wrongful Death* § 3:64 (2d ed. 1975). The justification—even though somewhat unrealistic for most workers—is that a longer working life would have resulted in a greater estate. If shortened life expectancy can be calculated prior to the victim's death, the issue is whether the damages for lost earning capacity for the years lost due to the injury should be awarded directly to the personal injury victim during his or her lifetime in a personal injury judgment, or to the decedent's heirs in a subsequent wrongful death action. The first alternative has the obvious advantage of allowing the victim to enjoy some of the value of his or her lost working capital and to personally decide—rather than have the state's rules on death actions determine—how to distribute any surplus remaining on death.

A case where the injured person is still alive but suffers from a fatal injury combines elements of two situations that are usually distinct: (1) an accident which impairs the victim's earning capacity without reducing his life expectancy—a situation in which his dependents have no independent claim of action against the tort-feasor; and (2) a fatal accident—where the dependents' interests are recognized in their own right in wrongful death statutes. Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages*, 50 Cal. L.Rev. 598, 608 (1962).

If damages awarded to the personal injury victim during his or her lifetime are based upon post-injury rather than pre-injury life expectancy, and decedents are barred from bringing a subsequent wrongful death action, then the tort-feasor benefits from conduct that curtailed the life expectancy of the victim. If, however, plaintiff's recovery in a personal injury action did not bar a subsequent wrongful death action, awarding full damages in both actions for lost earning capacity would result in a double recovery. The victim and estate are jointly unjustly enriched at the expense of the tort-feasor. Should damages for lost earning capacity be awarded to the victim in a personal injury judgment, the issue becomes whether a prior judgment in a personal injury action should bar any subsequent wrongful death action or only bar it to the extent that is necessary to prevent duplication of damages. 1 Speiser, *Recovery for Wrongful Death* § 5:20 (2d ed. 1975).

In the majority of American jurisdictions, damages awarded for loss of earning capacity are based on the victim's work-life expectancy unabbreviated by the injury. *See generally* 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 25.8 (2d ed. 1986). The problem of double recovery is avoided by barring subsequent wrongful death actions in those cases where the victim had previously collected a judgment in a personal injury action, i.e., the cause of action merges into the judgment. *Id.* at § 24.6.

New York courts have followed the majority of jurisdictions in totally barring a subsequent wrongful death action when there has been a previous judgment in a personal injury case, but have not clearly articulated their adherence to the majority approach of awarding damages for lost earning capacity based on pre-injury work-life expectancy. This lack of clarity could lead to gross under-compensation were neither the victim nor his or her beneficiaries to receive compensation for the years of the victim's lost earning capacity due to premature death.

## II. *Cases and Statutes*

### A. Majority Rule

"If the injury shortens plaintiff's life expectancy, the weight of American authority nevertheless computes future earning loss on the basis of the life expectancy plaintiff would have had without the injury." 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 25.8, at 552 n. 9 (2d ed. 1986). *See, e.g., Sea Land Services, Inc. v. Gaudet,* 414 U.S. 573, 595, 94 S.Ct. 806, 819, 39 L.Ed.2d 9 (1974) ("Under the prevailing American rule, a tort victim suing for damages for permanent injuries is permitted to base his recovery 'on his prospective earnings for the balance of his life expectancy at the time of his injury *undiminished by any shortening of that expectancy as a result of the injury.*'") (citations omitted); *Morrison v. State,* 516 P.2d 402, 406 (Alaska 1973) ("In fixing damages arising from permanent injury resulting in reduced earning capacity, the trial court must base the award on *preinjury life expectancy rather than a shortened expectancy due to the injury.* In such circumstances, the tort-feasor should not be able to reap the benefit of the victim's shortened life occasioned by permanent injury for which the wrongdoer is responsible.") (emphasis supplied); *Hallada v. Great Northern Ry.,* 244 Minn. 81, 69 N.W.2d 673 (in personal injury action, earning capacity was measured by determining what plaintiff would have earned during the rest of his life had he not been injured), *cert. denied,* 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *Borcherding v. Eklund,* 156 Neb. 196, 203, 55 N.W.2d 643, 650 (1952) ("'In an action for damages for personal injuries which are permanent and have impaired the earning capacity, damages for pecuniary loss by reasons of decreased earning power are to be *based on life expectancy immediately before the injury.*'") (citation omitted) (emphasis supplied); *Littman v. Bell Telephone Co.,* 315 Pa. 370, 172 A. 687 (1934) (damages must be based upon pre-injury life-expectancy, otherwise the defendant benefits by its own wrong); *Prairie Creek Coal Mining Co. v. Kittrell,* 106 Ark. 138, 153 S.W. 89 (1912) (victim could recover for

loss of earning power based upon pre-injury life expectancy even though his injury shortened his remaining life-expectancy to six months). *See also Burke v. United States,* 605 F.Supp. 981 (D.Md.1985) (damages awarded for impairment of earning capacity must be measured on the basis of pre-injury life expectancy); *McNeill v. United States,* 519 F.Supp. 283 (D.S.C. 1981) (same); *Fein v. Permanente Medical Group,* 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665 (same), *appeal dismissed,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985).

## B. Minority Rule

Some legal commentaries refer to a minority rule that calculates the loss of earning capacity based upon post-injury life expectancy. *See, e.g.,* 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 10.22 (1989); 22 Am.Jur.2d *Damages* § 164, at 151 n. 1 (1988); 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 25.8, at 551–52 n. 9 (2d ed. 1986). Apparently, however, only the Iowa court has, in a recent opinion, clearly articulated its strict adherence to a "minority rule that shortened life expectancy caused by the injury may be used to reduce damages when determining loss of earning capacity." *Ehlinger v. State,* 237 N.W.2d 784, 792 (Iowa 1976).

Though fraught with ambiguities, a general pattern appears to have emerged. Jurisdictions which do not award damages for the years of lost earnings caused by the injury would not consider a prior personal injury judgment as a bar to a subsequent wrongful death action. In contrast, those jurisdictions which award lost earnings based on pre-injury work-life expectancy would consider the prior recovery as either a total bar to bringing a subsequent wrongful death action, or less commonly, a bar only to the extent that is necessary to avoid a duplication of damages. Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages,* 50 Cal. L.Rev 598, 614–15 (1962); *Prosser and Keaton on The Law of Torts* § 127, at 955–57 (W. Keaton 5th ed. 1984).

## C. English Rule

The British approach the problem somewhat differently by awarding recovery for "abbreviation of life expectancy" as an independent element of damages. Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages,* 50 Cal.L.Rev. 598, 600 n. 10 (1962). The damages awarded for this shortened life expectancy are for loss of life itself, not loss of future pecuniary prospects. *See* Note, *The Measure of Damages For a Shortened Life,* 22 U.Chi.L.Rev. 505 (1955). Because of the difficulty of measuring this element of damages, English courts restrict damages for the shortening of life expectancy to small, flat sums. *Id.* at 508. This element of damages has been rejected by the majority of American courts. *See, e.g., Downie v. United States Lines Co.,* 359 F.2d 344, 347 (3d Cir.) (rejecting English theory that shortening of life expectancy is *per se* a compensable element of damages), *cert. denied,* 385 U.S. 897, 87 S.Ct. 201, 17 L.Ed.2d 130 (1966); *Burke v. United States,* 605 F.Supp. 981, 988 (D.Md. 1985) (citing Maryland law in rejecting separate damages for shortened life expectancy as independent element of damages); *Rhone v. Fisher,* 224 Md. 223, 167 A.2d 773, 778 (1961) (same) (citing cases). *See also* W. Prosser, J. Wade & V. Schwartz, *Torts, Cases and Materials* 542 (7th ed. 1982); 2 S. Speiser, C. Krauss & A. Gans, *The American Law of Torts* § 8:21, at 573 (1985). *But see McNeill v. United States,* 519 F.Supp. 283, 289 (D.S.C.1981) (supports South Carolina "position that shortened life expectancy may be viewed as a separate element of damages ... often referred to as the 'English Rule' ") (citations omitted). The under-compensation that results from the British reliance solely on this element of damages runs counter to the American concern for full recovery by the victim.

## D. New York

### 1. *Suit by Victim*

In *Warren's Negligence in the New York Courts,* it is stated unequivocally that New York uses the majority rule of

calculating lost earning capacity based upon pre-injury life expectancy.

> For purposes of measuring damages, *life expectancy must be based on the plaintiff's usual life expectancy, undiminished by any shortening of that expectancy resulting from the injury.* To hold otherwise would allow the tortfeasor to benefit merely because the injury inflicted was of a serious nature. Moreover, *an award based on preinjury life expectancy reflects the injured victim's actual loss, i.e., the ability to earn during a normal life span.*

7A *Warren's Negligence in the New York Courts, Personal Injuries,* § 7.04[1] (3d ed. Pt. 2 1984) (emphasis supplied) (footnotes omitted).

New York courts have not analyzed the problem, although they appear to utilize the majority rule, albeit usually in dicta or by implication gleaned from an analysis of the facts. There is a dearth of reported cases—other than those involving infants—where, at the time of trial, it could be predicted that the injury would substantially reduce the victim's work-life expectancy.

In *Miner v. Long Island Lighting Co.,* 47 A.D.2d 842, 849, 365 N.Y.S.2d 873, 880 (2d Dep't 1975), *rev'd on other grounds,* 40 N.Y.2d 372, 386 N.Y.S.2d 842, 353 N.E.2d 805 (1976), Justice Hopkins, dissenting, pointed out that "recovery for impaired earning capacity in the future is not based on shortened life expectancy, but on the usual expectancy." *See also Espana v. United States,* 616 F.2d 41, 44 (2d Cir. 1980) (affirming lower court finding that lost earnings must be calculated based on the victim's work-life expectancy "absent the accident," but the injury had not shortened the victim's work-life expectancy and the case was remanded in order to reconsider other damages issues), *McWeeney v. New York, New Haven, & Hartford R.R.,* 282 F.2d 34 (2d Cir.), *cert. denied,* 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960) (in calculating damages for loss of earning capacity resulting from total disability due to injury in New York, life expectancy tables can be used, but a more refined analysis takes into account "conditions *uncon-nected with the accident* that might have reduced plaintiff's expectancy below the normal term") (dictum) (emphasis supplied.) *Cf. Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij,* 443 F.2d 76 (2d Cir.1971) (defendant's request to charge jury that average statistical work-life expectancy of sixty-five years should be considered when calculating lost earning capacity in New York cases was appropriate; case remanded for new trial on damages; no indication that injury shortened victim's work-life expectancy), *appeal after remand,* 471 F.2d 705 (1972), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393 (1973); *Nelson v. State,* 105 Misc.2d 107, 431 N.Y.S.2d 955 (Ct.Cl.1980) (43 year-old victim's work-life expectancy estimated, at the time of trial, to be 18.2 years, seemingly based on pre-accident statistic, but the accident had not apparently shortened victim's work-life expectancy.)

The special policy problems in infancy cases have not been separately discussed by the New York courts. *Kavanaugh v. Nussbaum,* 129 A.D.2d 559, 514 N.Y.S.2d 55 (2d Dep't 1987), *aff'd,* 71 N.Y.2d 535, 528 N.Y.S.2d 8, 523 N.E.2d 284 (1988), was a case where an infant's future earning capacity was calculated using the work-life expectancy of a person having a normal statistical life expectancy, although the infant's real life expectancy had been reduced by 35% because of prenatal injury. *Merrill v. Albany Medical Center Hosp.,* 126 A.D.2d 66, 512 N.Y.S.2d 519 (3d Dep't 1987), also involved an infant. A 22 month-old patient whose injury had not shortened her life expectancy was awarded damages of $12,393,101 in a jury verdict. The court found that amount to be excessive and ordered a new trial unless the patient stipulated to reduce the amount of the verdict to $6,143,130; a statistical average work-life expectancy was apparently used in calculating damages for lost future earnings. The difficulty of accurately predicting an infant's future long-term earnings was briefly discussed by Justice Kane who concurred in part and dissented in part. *Id.* 512 N.Y.S.2d at 522.

The authoritative *New York Pattern Jury Instructions* require earning capacity to be calculated undiminished by the injury:

Any award you make for diminution of plaintiff's earning capacity in the future should be determined on the basis of his earnings prior to the injuries, the condition of his health, his prospect for advancement and the probabilities with respect to his future earnings *prior to his injuries*, the extent to which you find that those prospects or probabilities have been diminished by the injuries, *the length of time that you find plaintiff would reasonably be expected to work had he not been injured.*

*New York Pattern Jury Instructions* 2:290, at 641 (1974). (emphasis supplied). But the cited cases supporting the instruction do not differentiate instances where early death is likely, leaving case-law support for the proposed charge unclear.

### 2. *Wrongful Death Actions*

The common law denied a tort recovery for injury once the tort victim died and did not recognize any new and independent cause of action in the victim's dependents or heirs. The paradoxical result was that it was cheaper to kill someone than to injure him. *Prosser and Keaton on The Law of Torts* § 127, at 945 (W. Keaton 5th ed. 1984).

Passage of the Fatal Accidents Act of 1846, commonly known as Lord Campbell's Act, changed the rule in England. Similar changes were made in the United States. Restatement (Second) of Torts § 925 comment a (1977).

New York permits an action for wrongful death pursuant to the New York Estate Powers and Trusts Law § 5-4.1 and § 5-4.3, with the amount of recovery described essentially as loss to the estate.

§ 5-4.3 Amount of recovery

(a) The damages awarded to the plaintiff may be such sum as the jury or, where issues of fact are tried without a jury, the court or referee deems to be *fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought.*

(emphasis supplied). These damages are "exclusively for the benefit of the decedent's distributees." N.Y.Est.Powers & Trusts Law § 5-4.4(a). A long line of New York cases recognizes lost future earnings—less costs of living to the victim—as the most important element of such wrongful death damages. *See, e.g., Loetsch v. New York City Omnibus Corp.*, 291 N.Y. 308, 310, 52 N.E.2d 448 (1943); *Gilliard v. New York City Health and Hospitals Corp.*, 77 A.D.2d 532, 430 N.Y.S.2d 308 (1st Dep't 1980); *Didocha v. State*, 54 A.D.2d 786, 387 N.Y.S.2d 752 (3d Dep't 1976).

### E. Avoiding Double Recovery

Because future earnings can, as already noted, be an element of damages in both personal injury and wrongful death actions, there is a potential problem of double recovery. *Prosser and Keaton on The Law of Torts* § 127, at 955-56. (W. Keaton 5th ed. 1984). The problem has been solved in a number of ways. First, the previous personal injury judgment can act as a total bar against any subsequent wrongful death action. *Id.* at 955. Second, the damages awarded in a personal injury judgment can be deducted from a subsequent wrongful death action if the result would be a duplication of damages. *Id.* at 956 n. 29.

The Supreme Court approved the latter approach in the maritime case of *Sea-Land Services v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). A longshoreman who had recovered damages during his lifetime for his personal injury subsequently died as a result of those injuries. Writing for the Court, Justice Brennan held that the widow could recover for loss of services, loss of society and funeral expenses because none of these elements presented a problem of "double liability." *Id.* 414 U.S. at 591-92, 94 S.Ct. at 818. The widow could not recover for her loss of support to the extent that her damages would overlap the award for lost earnings in her husband's former action. "[T]he tort-feasor should not be required to make further compensation in a subsequent wrongful death suit

for any portion of previously paid wages." The Court observed that "application of familiar principles of collateral estoppel" would eliminate any problem of double liability. *Id.* at 592, 94 S.Ct. at 818.

Though *Sea–Land* involved maritime law, it has been used by a minority of jurisdictions in other kinds of cases to support the proposition that a judgment for a defendant in a personal injury action does not preclude a subsequent wrongful death action. Double liability is prevented because neither party may relitigate essential issues concerning liability already determined. Double recovery is avoided by not awarding damages if doing so will result in a duplication of damages. *See, e.g., Fein v. Permanente Medical Group,* 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665, 676, *appeal dismissed,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985); *Alfone v. Sarno,* 87 N.J. 99, 432 A.2d 857 (1981).

Partial offset seems difficult to apply since it involves trying to disentangle a prior jury's judgment. For example, if there was recovery for loss of consortium and a general jury verdict it would be impossible to determine how much had been awarded for loss of future income.

The majority of jurisdictions has held that a prior personal injury judgment acts as a total bar to a subsequent wrongful death action. 4 F. Harper, F. James, Jr. & O. Gray, *The Law of Torts* § 24.6 (2d ed. 1986); *Prosser and Keaton on the Law of Torts* § 127, at 955 (W. Keaton 5th ed. 1984).

As Judge Fuld noted in *Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969), New York courts are careful to provide against double recovery in case of death to prevent "an unmerited bounty [that] would contribute not compensation to the injured but punishment to the wrongdoer." *Id.* at 484, 301 N.Y.S.2d at 69, 248 N.E.2d at 904. New York courts follow the majority approach and interpret the wrongful death statute as requiring a total bar against subsequent wrongful death actions when the victim has previously received a judgment in a personal injury action. *See Littlewood v. Major,* 89 N.Y. 24 (1884); *Fontheim v. Third Avenue Ry.,* 257 A.D. 147, 12 N.Y.S.2d 90, 95 (1st Dep't 1939). *See also McDaniel v. Clarkstown Central School District No. 1,* 110 A.D.2d 349, 494 N.Y.S.2d 885 (2d Dept. 1985) (noting the continued viability of *Littlewood*). Nor does the availability of a survival action on behalf of the decedent's estate present a danger of double recovery. *See* N.Y.Est.Powers & Trusts Law §§ 11–3.2(b), 11–3.3 & Practice Commentary (McKinney 1967) (discussing relation between New York death and survival statutes).

Given the New York courts' long-standing position that a personal injury judgment bars a wrongful death action, fairness must permit the victim to recover during his or her lifetime for full loss of work-capital. Any other rule would result in gross under-compensation.

III. *Conclusion*

Since New York courts hold that there can be no wrongful death cause of action where the decedent has obtained a personal injury judgment in his lifetime, it is imperative that the personal injury award be based on the pre-injury work-life expectancy. Otherwise, New York would have the distinction of being the only American jurisdiction to deny damages for that portion of the victim's earning capacity curtailed by the tort-feasor.

The jury was properly instructed in this case to compute loss of earnings based upon work-life expectancy prior to the injury complained of. The award for loss of future earnings of $775,000.00 was proper. It was computed on the evidence in accordance with New York law.

So ordered.